**KOLLER LAW LLC**
David M. Koller, Esq. (90119)                                    *Counsel for Plaintiff*
2043 Locust Street, Suite 1B
Philadelphia, PA 19103
T: (215) 545-8917
F: (215) 575-0826
davidk@kollerlawfirm.com

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **KEVIN HUTCHINSON** | : | **Civil Action No.** |
| **4434 W Parrish Street** | : | |
| **Philadelphia, PA 19104** | : | |
| **Plaintiff,** | : | |
| | : | |
| **v.** | : | **Complaint and Jury Demand** |
| | : | |
| **INDEPENDENCE BLUE CROSS,** | : | |
| **1901 Market Street** | : | |
| **Philadelphia, PA 19103** | : | |
| **Defendant.** | : | |

## CIVIL ACTION

Plaintiff, Kevin Hutchinson (hereinafter "Plaintiff"), by and through his attorney, Koller Law, LLC, bring this civil matter against Independence Blue Cross (hereinafter "Defendant"), for violations of the Americans with Disabilities Act of 1990 ("ADA"), as amended, Title VII of the Civil Rights Act of 1964, as amended ("Title VII"), and the Pennsylvania Human Relations Act ("PHRA"). In support thereof, Plaintiff avers as follows:

## THE PARTIES

1. Plaintiff incorporates the preceding paragraphs as if set forth more fully at length herein.

2. Plaintiff is an adult individual residing at the above captioned address.

3. Upon information and belief, Independence Blue Cross is an insurance company with a location and corporate headquarters located at 1901 Market Street, Philadelphia, PA 19103.

4. At all times relevant hereto, Defendant employed managers, supervisors, agents, and employees who Plaintiff alleges had the authority to make decisions concerning Plaintiff's employment. In making said decisions, these individuals engaged in the pattern and practice of discriminatory treatment, which forms the basis of Plaintiff's allegations in the instant Complaint.

5. At all times relevant hereto, Defendant employed managers, supervisors, agents, and employees who acted directly or indirectly in the interest of the employer. In so acting, these individuals engaged in the pattern and practice of discriminatory treatment, which forms the basis of Plaintiff's allegations in the instant Complaint.

## JURISDICTION AND VENUE

6. Plaintiff incorporates the preceding paragraphs as if set forth more fully at length herein.

7. The Court may properly maintain personal jurisdiction over Defendant because the Defendant's contacts with this state and this judicial district are sufficient for the exercise of jurisdiction and comply with traditional notions of fair play and substantial justice, thus satisfying the standard set forth by the United States Supreme Court in International Shoe Co. v. Washington, 326 U.S. 310 (1945) and its progeny.

8. The Court may exercise original subject-matter jurisdiction over the instant action pursuant to 28 U.S.C. §§ 1331 and 1343(a)(4) because it arises under the laws of the United States and seeks redress for violations of federal law.

9. The Court may also maintain supplemental jurisdiction over state law claims set forth herein pursuant to 28 U.S.C. § 1367(a) and Rule 18(a) of the Federal Rules of Civil Procedure because they are sufficiently related to one or more claims within the Court's original jurisdiction that they form part of the same case or controversy.

10. Venue is properly laid in the Eastern District of Pennsylvania pursuant to 28 U.S.C. §§ 1391(b)(1) and 1391(b)(2) because some of the Plaintiff is domiciled in this judicial district, the Defendant is located in this judicial district and because all of the acts and/or omissions giving rise to the claims set forth herein occurred in this judicial district.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

11. Plaintiff incorporates the preceding paragraphs as if set forth more fully at length herein.

12. Plaintiff exhausted her administrative remedies under the ADA, Title VII and the PHRA.

13. Plaintiff timely filed a Complaint of Discrimination ("Complaint") with the U.S. Equal Employment Opportunity Commission ("EEOC") alleging disability and sex discrimination and retaliation against Defendant.

14. The Complaint was assigned a Charge Number of 530-2021-02831 and was dual filed with the Pennsylvania Human Relations Commission ("PHRC").

15. The EEOC issued Plaintiff a Dismissal and Notice of Rights ("Right to Sue") relative to the Charge and that Notice is dated June 13, 2021. Plaintiff received the notice by mail.

16. Prior to the filing of this action, Plaintiff notified the EEOC of his intent to proceed with a lawsuit in federal court.

17. Plaintiff files the instant Complaint within ninety (90) days of his receipt of his Right to Sue in this matter.

18. Plaintiff has exhausted his administrative remedies as to the allegations of this Complaint.

## MATERIAL FACTS

19. Plaintiff incorporates the preceding paragraphs as if set forth more fully at length herein.

20. On August 21, 2018, Defendant hired Plaintiff as a Member Help Team Representative.

21. Plaintiff was well qualified for his position and performed well.

22. In or around early October 2018, Plaintiff began to experience severe pain in his shoulders and neck.

23. Plaintiff immediately informed Alicia Booker, Trainer, of his symptoms.

24. However, Defendant refused to allow Plaintiff to take a day off to see a physician.

25. It was not until Plaintiff met with Michelle Chapman, Senior Disability Benefits Administrator, on October 26, 2018, that Defendant allowed him to take a day off to receive medical treatment.

26. Shortly afterwards, Plaintiff was examined by Dr. Alyson Fincke Axelrod, Physiatrist, who diagnosed him with a disk herniation and determined that he required a surgical procedure to treat his disk herniation.

27. Plaintiff's surgery was scheduled for February 6, 2019.

28. Additionally, Dr. Axelrod wrote Plaintiff a note for a reasonable accommodation in the form of a special chair.

29. However, Defendant refused to provide him with this reasonable accommodation, alleging that it was too expensive.

30. On November 19, 2018, Plaintiff met with Ms. Chapman and Carol Dunleavy, Senior Human Resource Business Partner, regarding his reasonable accommodation request.

31. Plaintiff complained about Defendant's refusal to accommodate him.

32. When Plaintiff had to sign a document, Ms. Chapman threw a pen at him for him to sign with.

33. Plaintiff immediately complained to Isabel Vasquez, Supervisor, about Ms. Chapman's unprofessional conduct.

34. However, Ms. Vasquez did nothing to address his complaint.

35. On or around February 6, 2019, Plaintiff began his medical leave of absence.

36. Plaintiff was scheduled to return to work in early March 2019.

37. On February 6, 2019, Dr. Alexander Vaccaro performed Plaintiff's spinal fusion operation.

38. Plaintiff returned to work in early March 2019 as scheduled.

39. Dr. Vaccaro issued Plaintiff the reasonable accommodation of the same chair that Dr. Axelrod had previously requested for him.

40. Defendant did not get Plaintiff the chair until approximately two (2) weeks after he returned from his medical leave.

41. On June 13, 2019, Plaintiff asked Victoria Lott, Supervisor, if they had a group meeting because it was not on the calendar.

42. Ms. Lott refused to answer his question and replied, "I don't answer stupid questions," as she walked away.

43. Plaintiff was shocked and offended by Ms. Lott's conduct.

44. Plaintiff believes she did this due to his gender, as he frequently saw her kindly answer simple questions from his female coworkers.

45. On October 24, 2019, Plaintiff complained about this incident to Deborah Cappella, Call Center Manager, and Lisa Franko, Operations Manager.

46. However, Ms. Cappella made light of his complaint and did not address it.

47. In or around December 2019, Dr. Robert Kosseff placed Plaintiff on the reasonable accommodation of additional break time in order to go to the restroom due to medication Plaintiff was placed on to treat his disabilities.

48. However, Defendant refused to accommodate Plaintiff fully, as it only issued him an additional 15-minute break.

49. On December 31, 2019, Ms. Lott informed Plaintiff that we were going to have a meeting, but not alone because she did "not feel safe meeting alone" with him.

50. Ms. Lott made this comment in front of multiple female coworkers.

51. Plaintiff believed this comment was made based on his gender and made in front of female coworkers to humiliate him.

52. On January 11, 2020, Plaintiff submitted a complaint to Ms. Cappella, Ms. Dunleavy, Ms. Franko and Ronald DeAbreu, Senior Employee Relations Partner, regarding the disability and gender discrimination Plaintiff was subjected to and Defendant's refusal to provide him with reasonable accommodations.

53. Plaintiff also complained that Defendant had not properly addressed his complaints.

54. In February 2020, Defendant moved Plaintiff to another team.

55. However, Defendant did not inform Plaintiff's supervisors of his bathroom accommodation, who proceeded to reprimand Plaintiff for his bathroom breaks until they were informed of his approved accommodation request.

56. This continued until in or around September 2020.

57. In addition, Plaintiff had to report to Ms. Lott for numerous shifts each month that he worked.

58. Before Plaintiff was transferred to his team, Ms. Lott was aware of his bathroom break accommodation.

59. However, she consistently reprimanded Plaintiff for his bathroom breaks, despite him informing her of his approved accommodation multiple times.

60. She did this until in or around the beginning of November 2020.

61. In October 2020, Defendant gave Plaintiff a low performance score.

62. Plaintiff believed that this was given to him out of retaliation for his complaints and for his reasonable accommodation request.

63. In November 2020, Plaintiff informed Elizabeth Puglisi, Supervisor, that he could work a half day on November 27, 2020, which was an office holiday.

64. However, Plaintiff informed that if he could not work the full day then he could not work that day.

65. Plaintiff took this to mean that he was not scheduled to report to work on November 27, 2020.

66. Unbeknownst to Plaintiff, Defendant set Plaintiff an email that he was scheduled to report to work on November 27, 2020.

67. Plaintiff did not receive the email as he was in the process of moving residences and had poor internet connection during this time.

68. Defendant did not mention that Plaintiff was scheduled to work on November 27, 2020 to him in person.

69. On November 27, 2020, Ms. Puglisi called Plaintiff and informed him that he needed to report to work immediately.

70. Plaintiff was in Baltimore at the time and informed Ms. Puglisi of this and that it was not possible for him to report to work.

71. Plaintiff notified Ms. Puglisi further that he did not believe that he was scheduled for work at Defendant.

72. Ms. Puglisi informed Plaintiff that he would receive an attendance demerit because of his absence.

73. On December 6, 2020, Ms. Puglisi, Ms. Cappella, and a Human Resource Representative called Plaintiff and terminated him.

74. They informed Plaintiff that because he missed an office holiday, the attendance demerit went two (2) levels higher and that he was terminated for this reason.

75. Upon information and belief, non-disabled and female employees who did not request reasonable accommodations missed working on an office holiday and were not terminated.

76. It is Plaintiff's position that he was discriminated against due to his disability and gender, denied reasonable accommodations and retaliated against for complaining about the aforementioned discrimination and requesting reasonable accommodations in violation of the ADA and Title VII.

**COUNT I – DISABILITY DISCRIMINATION**
**<u>AMERICANS WITH DISABILITIES ACT OF 1990, AS AMENDED</u>**

77. Plaintiff incorporates the preceding paragraphs as if set forth more fully at length herein.

78. Plaintiff is a "qualified individual with a disability" as that term is define under the ADA because Plaintiff has, or had at all time relevant hereto, a disability that substantially limits or limited one or more major life activities or because Plaintiff had a record of such an impairment or because Plaintiff was regarded as and/or perceived by Defendant and its agents as being disabled.

79. Plaintiff was qualified to perform the job.

80. Plaintiff was subject to an adverse employment action, including, but not limited to termination.

81. Circumstances indicated that Plaintiff's disabilities were the reason for the adverse employment action.

82. Defendant did not have a legitimate non-discriminatory reason for terminating Plaintiff.

83. Plaintiff's disabilities motivated Defendant's decision to terminate Plaintiff.

84. The purported reason for Defendant's decision is pretextual.

85. Others similarly situated but outside of Plaintiff's protected class were treated more favorably.

86. The above actions by Defendant also constitute a failure to accommodate and a failure to engage in the required interactive process.

87. As a result of Defendant's unlawful disability discrimination, Plaintiff has suffered damages as set forth herein.

**WHEREFORE**, Plaintiff seeks the damages set forth in the Prayer for Relief clause of this Complaint, *infra*.

## COUNT II – DISABILITY DISCRIMINATION
## PENNSYLVANIA HUMAN RELATIONS ACT

88. Plaintiff incorporates the preceding paragraphs as if set forth more fully at length herein.

89. Plaintiff is a "qualified individual with a disability" as that term is define under the PHRA because Plaintiff has, or had at all time relevant hereto, a disability that substantially limits or limited one or more major life activities or because Plaintiff had a record of such an impairment or because Plaintiff was regarded as and/or perceived by Defendant and its agents as being disabled.

90. Plaintiff was qualified to perform the job.

91. Plaintiff was subject to an adverse employment action, including, but not limited to termination.

92. Circumstances indicated that Plaintiff's disabilities were the reason for the adverse employment action.

93. Defendant did not have a legitimate non-discriminatory reason for terminating Plaintiff.

94. Plaintiff's disabilities motivated Defendant's decision to terminate Plaintiff.

95. The purported reason for Defendant's decision is pretextual.

96. Others similarly situated but outside of Plaintiff's protected class were treated more favorably.

97. The above actions by Defendant also constitute a failure to accommodate and a failure to engage in the required interactive process.

98. As a result of Defendant's unlawful disability discrimination, Plaintiff has suffered damages as set forth herein.

**WHEREFORE**, Plaintiff seeks the damages set forth in the Prayer for Relief clause of this Complaint, *infra*.

## COUNT III – GENDER DISCRIMINATION
## TITLE VII OF THE CIVILE RIGHTS ACT OF 1964, AS AMENDED

99. Plaintiff incorporates the preceding paragraphs as if set forth more fully at length herein.

100. Plaintiff is a member of protected classes in that he is male.

101. Plaintiff was qualified to perform the job.

102. Similarly situated persons outside of Plaintiff's protected classes were treated more favorably than Plaintiff.

103. Circumstances exist related to the above cited employment actions that give rise to an inference of discrimination.

104. No legitimate, non-discriminatory reasons exist for the above cited adverse employment actions that Plaintiff suffered.

105. The reasons cited by Defendant for the adverse employment actions that Plaintiff suffered are pretext for discrimination.

106. Defendant terminated Plaintiff.

107. As a result of Defendant's unlawful gender discrimination, Plaintiff has suffered damages as set forth herein.

  **WHEREFORE**, Plaintiff seeks the damages set forth in the Prayer for Relief clause of this Complaint, *infra.*

## COUNT IV – GENDER DISCRIMINATION
## PENNSYLVANIA HUMAN RELATIONS ACT

108. Plaintiff incorporates the preceding paragraphs as if set forth more fully at length herein.

109. Plaintiff is a member of protected calluses in that he is male.

110. Plaintiff was qualified to perform the job.

111. Similarly situated persons outside of Plaintiff's protected classes were treated more favorably than Plaintiff.

112. Circumstances exist related to the above cited employment actions that give rise to an inference of discrimination.

113. No legitimate, non-discriminatory reasons exist for the above cited adverse employment actions that Plaintiff suffered.

114. The reasons cited by Defendant for the adverse employment actions that Plaintiff suffered are pretext for discrimination.

115. Defendant terminated Plaintiff.

116. As a result of Defendant's unlawful gender discrimination, Plaintiff has suffered damages as set forth herein.

**WHEREFORE**, Plaintiff seeks the damages set forth in the Prayer for Relief clause of this Complaint, *infra.*

## COUNT V – RETALIATION
## AMERICANS WITH DISABILITIES ACT OF 1990, AS AMENDED

117. Plaintiff incorporates all the above paragraphs as if they were set forth at length herein.

118. Plaintiff engaged in activity protected by ADA when he requested reasonable accommodations and reported disability discrimination.

119. Thereafter, Defendant took adverse employment actions against Plaintiff, including, but not limited to, termination.

120. There exists a causal connection between Plaintiff's participation of the protected activity and the adverse employment action.

**WHEREFORE**, Plaintiff seeks the damages set forth in the Prayer for Relief clause of this Complaint, *infra.*

## COUNT VI – RETALIATION
## TITLE VII OF THE CIVIL RIGHTS ACT OF 1964, AS AMENDED

121. Plaintiff incorporates all the above paragraphs as if they were set forth at length herein.

122. Plaintiff engaged in activity protected by Title VII when he reported gender discrimination.

123. Thereafter, Defendant took adverse employment actions against Plaintiff, including, but not limited to, termination.

124. There exists a causal connection between Plaintiff's participation of the protected activity and the adverse employment action.

**WHEREFORE**, Plaintiff seeks the damages set forth in the Prayer for Relief clause of this Complaint, *infra.*

## COUNT VII – RETALIATION
## PENNSYLVANIA HUMAN RELATIONS ACT

125. Plaintiff incorporates all the above paragraphs as if they were set forth at length herein.

126. Plaintiff engaged in activity protected by the PHRA when he requested reasonable accommodations and reported disability and gender discrimination.

127. Thereafter, Defendant took adverse employment actions against Plaintiff, including, but not limited to, termination.

128. There exists a causal connection between Plaintiff's participation of the protected activity and the adverse employment action.

**WHEREFORE**, Plaintiff seeks the damages set forth in the Prayer for Relief clause of this Complaint, *infra*.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, Kevin Hutchinson, requests that the Court grant him the following relief against Defendant:

(a)    Compensatory damages;

(b)    Punitive damages;

(c)    Liquidated damages;

(d)    Emotional pain and suffering;

(e)    Reasonable attorneys' fees;

(f)    Recoverable costs;

(g)    Pre and post judgment interest;

(h)    An allowance to compensate for negative tax consequences;

(i)    A permanent injunction enjoining Defendant, its directors, officers, employees, agents, successors, heirs and assigns, and all persons in active concert or

13

participation with it, from engaging in, ratifying, or refusing to correct, employment practices which discriminate in violation of the ADEA, Title VII, and the PHRA.

(j)      Order Defendant to institute and implement, and for its employees, to attend and/or otherwise participate in,  training  programs, policies, practices and programs which provide equal employment opportunities;

(k)      Order Defendant to remove and expunge, or to cause to be removed and expunged, all negative, discriminatory, and/or defamatory memoranda and documentation from Plaintiff's record of employment, including, but not limited, the pre-textual reasons cited for its adverse actions, disciplines, and termination; and

(l)      Awarding extraordinary, equitable and/or injunctive relief as permitted by law, equity and the federal statutory provisions sued hereunder, pursuant to Rules 64 and 65 of the Federal Rules of Civil Procedure.

## JURY TRIAL DEMAND

Demand is hereby made for a trial by jury as to all issues.

## CERTIFICATION

I hereby certify that to the best of my knowledge and belief the above matter in controversy is not the subject of any other action pending in any court or of a pending arbitration proceeding, nor at the present time is any other action or arbitration proceeding contemplated.


RESPECTFULLY SUBMITTED,

KOLLER LAW, LLC


Date: September 14, 2021      **By:**  */s/ David M. Koller*
                            David M. Koller, Esquire (90119)
                            2043 Locust Street, Suite 1B
                            Philadelphia, PA 19103
                            215-545-8917
                            davidk@kollerlawfirm.com

                            *Counsel for Plaintiff*